Filed 7/27/26  In re Tre. C. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re TRE. C. et al., Persons Coming Under the Juvenile Court Law. | B348705 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>F.B.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 23CCJP02622 |

APPEAL from an order of the Superior Court of Los Angeles County, Syna N. Dennis, Judge.  Affirmed in part and dismissed in part.

Law Offices of Vincent W. Davis & Associates and Vincent W. Davis, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Jacklyn K. Louie, Assistant County Counsel, and Melania Vartanian, Deputy County Counsel, for Plaintiff and Respondent.

Maternal great-aunt F.B. challenges the juvenile court's order declining to place her grandnieces, seven-year-old Tre. C. and five-year-old Tri. C., in her care. We dismiss this appeal to the extent maternal great-aunt challenges the summary denial of her Welfare and Institutions Code section 388 petition asking to be considered for placement, as no such order exists. (Undesignated statutory references are to the Welfare and Institutions Code.) That petition was granted. We affirm the order declining to place the children in maternal great-aunt's care because the juvenile court properly weighed the relevant factors set forth in section 361.3, subdivision (a), to conclude the children's continued placement with their current caregiver was in their best interests.

## I.

In January 2024, the juvenile court declared Tre. and Tri. dependents of the court based on mother's failure to protect them from an unknown perpetrator's physical abuse and her failure to provide them with proper care and supervision. A month later, and at mother's request, the Department of Children and Family Services (DCFS) placed the children with their current caregiver, non-relative Y.W.

In March 2025, a month after mother's reunification services were terminated, and nearly eight months after father's reunification services were terminated, maternal great-aunt filed a section 388 petition asking the juvenile court to consider placing the children in her care under section 361.3 and to grant her visitation with the children. Following a hearing held in May 2025, the juvenile court granted the section 388 petition,

scheduled a section 361.3 hearing, and ordered the introduction of gradual visitation with the maternal great-aunt.

The section 361.3 assessment hearing occurred in July 2025.  After receiving evidence and hearing arguments, the juvenile court found "changing [the children's] placement would be contrary to [their] best interest[s] and well-being" and, therefore, declined to place them with maternal great-aunt.  As discussed further in part III, below, the court explained how the factors set forth in section 361.3, subdivision (a), guided its ruling.

Maternal great-aunt filed a notice of appeal from "[a]ll findings and orders made by the court on 8/6/25, including but not limited to denial of Petitioner's 388 Petition pursuant to 361.3."  Although the juvenile court made no orders relating to those statutes on that date, it is reasonably clear from the notice, as well as the record prepared for this appeal, that maternal great-aunt sought to challenge the order denying her request for placement.  DCFS briefed these issues without objection.  We discern no prejudice to DCFS arising from the notice's misidentification of the order disputed on appeal.  We, therefore, liberally construe the notice of appeal and treat it as taken from the July 2025 denial of maternal great-aunt's request for placement under section 361.3.  (See *In re R.M.* (2025) 111 Cal.App.5th 119, 129, fn. 2 [liberally construing notice of appeal misidentifying the date and type of orders at issue when the notice was "reasonably clear" as to which orders appellant "intended to appeal from" and the appellate court "perceive[d] no prejudice to [respondent] from any ambiguity in the notice"].)

**II.**

Before challenging the juvenile court's section 361.3 analysis, maternal great-aunt argues the court erred by summarily denying her section 388 petition without holding an evidentiary hearing.  But this summary denial did not occur.  As noted above, in May 2025, the court *granted* her section 388 petition after holding a hearing.  Thus, to the extent maternal great-aunt challenges a nonexistent order, her appeal must be dismissed.  (See *People v. Burnham* (1961) 194 Cal.App.2d 836, 838 [appeal from nonexistent order denying motion for new trial dismissed]; see also *Shpiller v. Harry C's Redlands* (1993) 13 Cal.App.4th 1177, 1180 ["[B]ecause cross-complainant did not appeal from an existing appealable order, we dismiss the appeal"].)

**III.**

The juvenile court did not abuse its discretion by finding continued placement with Y.W. was in the children's best interests and declining to place the children with maternal great-aunt.

"Section 361.3 gives 'preferential consideration' to a request by a relative of a child who has been removed from parental custody for placement of that child.  ' "Preferential consideration" means that the relative seeking placement shall be the first placement to be considered and investigated.' " (*In re M.H.* (2018) 21 Cal.App.5th 1296, 1302–1303, quoting § 361.3, subd. (c)(1).)  Accordingly, "preferential consideration under section 361.3 'does not create an evidentiary presumption in favor of a relative, but merely places the relative at the head of the line when the court is determining which placement is in the child's best interests.' " (*Alicia B. v. Superior Court* (2004)

116 Cal.App.4th 856, 863 (*Alicia B.*).)  In general, "[t]he preference applies at the disposition hearing and thereafter 'whenever a new placement of the child must be made.' " (*In re M.H.*, at p. 1303.)[1]

In assessing a relative's request for placement, DCFS and the juvenile court consider eight nonexclusive factors set forth in section 361.3, subdivision (a).  (§ 361.3, subd. (a).)  As relevant here, those factors include the best interest of the child, including the child's special physical, psychological, educational, medical, or emotional needs (*id.*, subd. (a)(1)); the wishes of the parent, the requesting relative, and the child, if appropriate (*id.*, subd. (a)(2)); the Family Code provisions regarding relative placement, including the preference for relative placement under Family Code section 7950 (*id.*, subd. (a)(3)); the relative's good moral character, including whether the relative has a history of criminal violence, child abuse, or neglect (*id.*, subd. (a)(5)); the nature and duration of the child's relationship with the relative, as well as the relative's desire to care for, and provide legal permanency for, the child if reunification is unsuccessful (*id.*, subd. (a)(6)); and the relative's ability to provide a safe, stable, and secure environment for the child, meet the child's needs, protect the child from their parents, and facilitate visitation with the child's other relatives (*id.*, subd. (a)(7), (8)).  Ultimately, however, "[t]he linchpin of a section 361.3 analysis is whether

---

[1]     Because we address maternal great-aunt's section 361.3 argument on the merits, we need not consider DCFS's contention that "the relative placement preference did not apply" because the children "were not actually in need of a new placement" when maternal great-aunt filed her section 388 petition.

placement with a relative is in the best interests of the minor." (*Alicia B.*, *supra*, 116 Cal.App.4th at pp. 862–863.)

If the juvenile court declines to place the child with a relative considered for placement under section 361.3, the court must "state for the record the reasons placement with that relative was denied." (§ 361.3, subd. (e).)

We review the juvenile court's determination regarding a child's placement under section 361.3 for abuse of discretion. (*Alicia B.*, *supra*, 116 Cal.App.4th at p. 863.) " ' "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

Maternal great-aunt contends the juvenile court failed to analyze the section 361.3 factors in denying her request for placement. Had the court done so, she argues, "it is likely a different result would have occurred" because the factors "weighed heavily in [her] favor . . . ."

Maternal great-aunt's contention fails. In denying her request for placement, the juvenile court analyzed the relevant section 361.3 factors in detail and explained its reasons for finding continued placement with Y.W. was in the children's best interests. It noted the children had a strong, secure attachment to Y.W., who has provided them with a stable, loving home and consistently met their needs for well over a year, and the children would likely suffer emotional harm if required to reside with maternal great-aunt, with whom they had no relationship. Further, the court expressed concern with maternal great-aunt's ability to provide a safe and stable environment for the children.

6

It noted she is already the legal guardian of twins with special needs and had four previous child welfare referrals in the past four years. Thus, the juvenile court reasoned, although the parents and maternal great-aunt wished to have the children placed in the latter's care, the section 361.3 factors "strongly support[ed]" the children's continued placement with Y.W.

The record supports the juvenile court's analysis of the section 361.3 factors and demonstrates the court did not " ' "exceed[ ] the bounds of reason" ' " in denying maternal great-aunt's request for placement. (*In re Stephanie M.*, *supra*, 7 Cal.4th at pp. 318–319.)

Although mother recently expressed a desire to have her children placed with maternal great-aunt, she initially identified Y.W. as the preferred caregiver for her children. The children have lived with Y.W. for over a year. DCFS observed from its monthly visits with the children that they have developed a strong attachment to Y.W. According to DCFS, maintenance of that bond was "critical to the children's emotional well-being and sense of stability," and the children's relocation to the home of a "relative they do not know could result in emotional distress and potentially disrupt their sense of security and attachment."

In contrast with Y.W., maternal great-aunt had no relationship with Tre. and Tri. Prior to filing her section 388 petition, maternal great-aunt had never met the children. And although her brother informed her of the children's initial placement in foster care "years ago," maternal great-aunt did not seek their placement in her care at the time.

The children's limited relationship with maternal great-aunt was apparent during their visits with her. They preferred to interact with the DCFS social worker monitoring the visits

7

who, on multiple occasions, had to redirect them to spend time with their family. While Tre. was more open to interacting with maternal great-aunt, Tri. showed signs of emotional distress, preferring to sit with the DCFS social worker and frequently expressing a preference to stay with Y.W. over maternal great-aunt. Maternal great-aunt interacted with the children when approached but was often preoccupied with her cellphone and conversations with others.

Maternal great-aunt's home has been RFA-approved for two children since 2019. She has legal guardianship of nine-year-old twins, one of whom has autism, the other of whom has ADHD, and both of whom have been diagnosed with fetal alcohol syndrome. According to maternal great-aunt, the twins exhibit " 'chaotic' " behaviors. Her resource family support (RFS) social worker opined that, although maternal great-aunt is attentive to the twins' needs, caring for two more children would be challenging and difficult for her, as she has, on occasion, become overwhelmed in dealing with the twins' behavioral challenges. On this point, the RFS social worker noted that, in 2024, DCFS received a referral based on a report that maternal great-aunt " 'had snatched one of the kids in the store,' " which required the twins' brief relocation to a different placement. Further, the RFS social worker related maternal great-aunt has sought DCFS's assistance in seeking respite care and only has an adult son who lives primarily in Las Vegas to support her.

Tre. has been diagnosed with Borderline Intellectual Functioning and Phonological (Articulation) Disorder and has been classified in the "[e]xtremely [l]ow" range of intellectual functioning, experiencing "major difficulty" on tasks assessing her verbal reasoning skills, knowledge of general factual

8

information, nonverbal logical reasoning, problem solving, short-term visual memory, and processing speed. (Italics omitted.) Tre. requires support in daily living skills, such as dressing herself, and may have challenges with other areas of "adaptive functioning," such as communication and socialization. She has been referred to the Regional Center and has an Individualized Education Program.

On this record, we conclude the juvenile court reasonably found the section 361.3 factors demonstrated continued placement with Y.W., as opposed to placement with maternal great-aunt, was in the children's best interests. The court, therefore, did not abuse its discretion by denying maternal great-aunt's request for placement.

### DISPOSITION

We dismiss the appeal from the nonexistent order summarily denying maternal great-aunt's section 388 petition. We affirm the order declining to place the children in maternal great-aunt's care.

SCHERB, J.

We concur:

STRATTON, P. J.                    VIRAMONTES, J.

9